Filed 7/15/15  S.T. v. Super. Ct. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| S.T. et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF SAN MATEO COUNTY, <br><br> Respondent; <br><br> SAN MATEO COUNTY HUMAN SERVICES AGENCY, <br><br> Real Party in Interest. | A144865 <br><br> (San Mateo County <br> Super. Ct. Nos. 82132 & 83574) |

Petitioners S.T. (Father) and A.L. (Mother) (collectively, Parents) seek writ review (Cal. Rules of Court, rule 8.452) of the decision of the juvenile court setting a hearing under Welfare and Institutions Code section 366.26,[1] following an order denying reunification services with their daughters, Angelina T. (Angelina) and Isabella T. (Isabella). We grant the petitions solely with respect to the trial court's order denying reunification services with Isabella, and otherwise deny the petitions.

BACKGROUND

In March 2012, a dependency petition was filed for Angelina, then ten months old. An amended petition filed shortly thereafter alleged Parents had a history of domestic

---

[1] All undesignated section references are to the Welfare and Institutions Code.

1

violence; in February 2012, Mother hit Father causing him to bleed, while Angelina was in the home; after police arrived, Mother was arrested for domestic violence and then hospitalized pursuant to section 5150 after making suicidal statements; and Parents subsequently violated an emergency protective order protecting Father from Mother. The second allegation stated Parents had histories of mental health issues (for Mother, borderline personality disorder and major depressive disorder; for Father, schizophrenia); had entered into a voluntary services plan with the Agency in October 2011; failed to comply with that plan by failing to take prescribed medication and follow through with counseling, resulting in emotional instability and Mother's section 5150 hospitalization; and Parents' house had child safety hazards. The third allegation stated Mother had lost custody of an older child due to her untreated mental health issues.

The jurisdiction and disposition hearing was held on March 26, 2012. The juvenile court sustained the allegations of the amended petition and declared Angelina a dependent of the court. Angelina was removed from Parents' custody and detained with her maternal grandparents. Reunification services were ordered for Parents.

During the following six months, Parents participated in services, therapy, and mental health treatment and had stable housing. On September 26, 2012, Angelina was returned to Parents' custody with continued court supervision and family maintenance services.

A review hearing was held in March 2013. The Agency's report stated that in January Parents had been involved in another domestic violence incident while Angelina was in the home, resulting in Father's arrest. Mother and Angelina moved to a domestic violence shelter, but returned to live with Father on March 1. Mother had been participating in therapy and was compliant with her medications. She had been inconsistent in attending psychiatrist appointments and had not attended domestic violence classes because she was on pregnancy bed rest. Father had been inconsistent with individual therapy, anger management classes, and his medications. The juvenile court ordered continued family maintenance services and set a second review hearing for September.

2

During the following six months, Isabella was born. Parents did not report any incidents of physical violence during this period, although they had a verbal argument while the children were home. Mother was compliant with her medications but inconsistent with anger management classes. Father was inconsistent with therapy and was not participating in anger management classes. At the September 2013 review hearing, the juvenile court ordered continued court supervision and family maintenance services.

In February 2014, the Agency filed a dependency petition on behalf of Isabella, then 10 months old, alleging Parents continued to engage in domestic violence.[2] The Agency's jurisdiction/disposition report stated Parents continued to engage in domestic violence disputes in the children's presence. Mother and the children moved to a domestic violence shelter in January, but Mother was asked to leave in March because of her aggression towards residents and staff. Between March and May 2014, Mother was transient, moving multiple times among different temporary housing; in May, she moved in with her parents and resumed mental health treatment. Father had not seen his psychiatrist or therapist regularly, and was not participating in domestic violence classes. In April 2014, Father was hospitalized due to the need to take psychotropic medications. In April, Mother allowed Father to stay with her and the children for a couple of days. In June 2014, the juvenile court sustained the amended allegations of the petition, declared Isabella a dependent of the court, and ordered her to remain in Mother's custody with continued court supervision and services. The court directed no contact between Father and Mother except for the peaceful exchange of the children for visitations.

A review hearing was held in July 2014. Father had not resumed mental health services and the Agency expressed concerns about his mental health. He had been sending threatening messages to Mother. Mother and the children had been living with Mother's parents, but in late July they asked Mother to leave because of her verbal abuse.

_____

[2] The Agency concurrently filed a section 387 supplemental petition on behalf of Angelina with similar allegations. This petition was subsequently withdrawn.

The court ordered additional family maintenance services and ordered Father have only supervised visitation at the visitation center.

In October 2014, the Agency filed section 387 supplemental petitions on behalf of both children, alleging the prior dispositions had not been effective in protecting the children. The supplemental petitions alleged Mother had repeatedly violated court orders by permitting Father to have access to the children without Agency supervision, and Parents had continued to engage in domestic violence disputes in the children's presence and had not consistently utilized services. Following a detention hearing, the children were detained with their maternal grandparents pending the jurisdiction and disposition hearing.

In October 2014 Agency reports, the Agency social worker reported she had learned Mother was allowing Father access to the children and Father had been transporting the children to and from daycare. On August 25, the social worker had reminded Mother that Father was not allowed any visits with the children without Agency supervision. On September 30, Mother told the social worker Father was continuing to transport the children. The social worker again warned Mother that Father's visits with the children had to be supervised by the Agency. On October 9, Parents engaged in a public verbal altercation during which Father was holding Angelina and yelling at Mother, "it's over, it's over." The police were called by a third party. Mother told a responding police officer that in early October, she had continued to allow Father to visit her and the children in their motel room almost every day. Subsequently, Father told the Agency social worker he had in fact been living with Mother and the children for a month before the October 9 incident, they were back together, and they had agreed not to call the Agency or the police in the event of further domestic disputes. Father also reported an incident in which Mother repeatedly hit Father until he bled, in front of the children.

The Agency's report also noted Mother had not transferred her medical insurance to her new county of residence so that she could access mental health services, had not enrolled the children in recommended therapy, and had delayed getting them into

4

protective daycare. Father was not participating in mental health treatment or domestic violence/anger management classes.

The jurisdiction and disposition hearing was continued several times; the Agency filed interim reports during this period. In a December 2014 Agency report, the social worker reported both Parents were failing to participate in mental health treatment. The children's behavior and development had improved since moving in with the maternal grandparents.

A January 2015 Agency report described a breakdown in Mother's communication with her social worker, as Mother insisted on communicating only by e-mail. Mother was homeless and refused to participate in mental health services. The maternal grandparents reported Mother exhibited signs of deteriorating mental health, acting "paranoid," appearing unkempt, and switching from topic to topic. Mother had failed to schedule several visits with the children. Father was not participating in mental health treatment and was not taking his medications. He had consistently visited the children and the visitations had gone well.

A final Agency report was filed April 1, 2015. Mother had not been getting mental health services and was hospitalized at a crisis intervention facility in March. Father was apparently living in his car and had not completed services for mental health, substance abuse, or domestic violence.

The jurisdiction and disposition hearing was held on April 6. The Agency social worker was the sole witness at the hearing. Neither Mother nor Father attended.

The juvenile court sustained the supplemental petitions without amendment. The court removed both children from Mother's custody and placed them with the maternal grandparents. With respect to Angelina, the court denied reunification services pursuant to section 361.5, subdivision (a), finding she was under three years of age when she was initially removed, Parents received six months of reunification services, and there is not a substantial probability that she will be returned to Parents' custody. With respect to Isabella, the court bypassed reunification services pursuant to section 361.5, subdivision (b)(10), finding Angelina was removed from Parents, Parents failed to reunify with

5

Angelina, the court had ordered termination of reunification services for Angelina, and Parents have not subsequently made a reasonable effort to treat the problems that led to Angelina's removal. A hearing under section 366.26 was set for July 20, 2015.

DISCUSSION

I. *Notice*

Mother argues she was not properly noticed for the October 2014 section 387 petitions or the hearings on those petitions. She primarily contends notice should have been sent to a San Bruno address where she had not lived since early 2014.[3] She also argues notice should have been sent to Turlock where she lived from approximately August through December, 2014. We reject this argument.

Mother appeared personally at the initial hearing on the section 387 petitions and at the next two hearings, in October and December 2014, as noted by the clerk on the record and by the court minutes. She made no objection to the notice provided her at these hearings. Accordingly, she has forfeited any claimed error in service; she has also failed to demonstrate any inadequate service was prejudicial. (*In re S.B.* (2008) 164 Cal.App.4th 289, 302 [objection to inadequate notice forfeited where party had actual notice and failed to object]; *In re A.D.* (2011) 196 Cal.App.4th 1319, 1325 ["a failure to give notice in dependency proceedings is subject to a harmless error analysis"].)

Mother was homeless as of early January 2015. Between January and April 2015, Mother lived in an Alameda County hotel, a Modesto residence, a Modesto crisis intervention facility, and an unknown location after her discharge from the facility on March 28. Notice of the hearings during this period were mailed to Mother at her parents' address in Daly City. " 'The means employed to give notice "must be such as one, desirous of actually informing the absentee, might reasonably adopt to accomplish it." ' " (*In re Arlyne A.* (2000) 85 Cal.App.4th 591, 598.) It was reasonable to conclude Mother's parents' address was the address where Mother was most likely to receive

---

[3] Although Mother argues this address should be deemed her address of record pursuant to section 316.1, she never formally designated it as such.

6

actual notice: she was moving frequently during this period, yet apparently remained in contact with her parents. Certainly, Mother was much more likely to receive actual notice at this address than in San Bruno or Turlock, where she did not live during this period. Moreover, Mother spoke to the Agency social worker before the April 6 hearing and confirmed that she knew about that court date. The other jurisdiction/disposition hearing set during this period merely continued the hearing date.[4] Accordingly, Mother had actual notice of the critical hearing and has failed to show prejudice from any inadequacies in the notice. (*In re A.D., supra,* 196 Cal.App.4th at p. 1325.)

II. *Jurisdiction*

Parents challenge the juvenile court's order sustaining the section 387 petitions. We reject this challenge.

"Under section 387, [the Agency] may bring a supplemental petition for an order changing or modifying a previous order by removing a child from the physical custody of a parent. . . . [The Agency] 'has the burden to show by a preponderance of the evidence that the factual allegations alleged in the petition are true. If the court finds the factual allegations are true, then the court determines whether the previous disposition is no longer effective in protecting the child . . . .' " (*In re A.O.* (2010) 185 Cal.App.4th 103, 109–110.) "We review an order sustaining a section 387 petition for substantial evidence." (*Id.* at p. 109.)

A. *Substantial Evidence*

Parents allege several aspects of the jurisdictional findings are not supported by substantial evidence. Parents first identify errors in Angelina's petition. The allegations of Angelina's petition began: "On March 26, 2012, [Angelina], age three, was declared a Dependent of the Court with family reunification services to the parents. On September 26, 2013, after six months of reunification services, the child was ordered to return to the care of the mother with family maintenance services to both parents." Parents point out

---

[4] Hearings on a section 388 petition regarding the right to make educational and medical decisions for the children were also held, but are not at issue in this appeal.

7

Angelina was returned on September 26, 2012, not September 26, 2013, and was returned to both Parents, not just to Mother. While true, Parents have shown no prejudice from the errors, which are not relevant to the question of whether Angelina was at substantial risk of physical harm or neglect. (*In re Athena P.* (2002) 103 Cal.App.4th 617, 627 [challenge to jurisdictional allegations reviewed for harmless error].)

Parents challenge the allegation in both petitions that Mother "repeatedly violated Court orders by permitting the father to have access to the child without Agency supervision."[5] Mother argues there were no court orders directing her to prohibit Father from access to the children because the visitation order was directed only at Father. Again, we see no prejudice from any error. (*In re Athena P., supra,* 103 Cal.App.4th at p. 627.) Mother was well aware that the court had determined Father should not have access to the children without Agency supervision, in the interests of protecting the children, and the Agency had repeatedly directed her not to allow this. The significance of the allegation is not that Mother violated court orders, but that she knowingly enabled Father's access to the children without Agency supervision, contrary to the children's safety and in the face of contrary direction from the court and the Agency.[6]

Parents next challenge the allegation in both petitions that they "have continued to engage in domestic violence disputes in the presence of the child." Parents argue the October 2014 incident was verbal, not physical, and therefore could not be considered a domestic violence dispute. We disagree. The October 2014 incident involved Parents yelling at each other in front of the children—and while Father was holding Angelina—to such an extent that the police were called. The Domestic Violence Prevention Act (Fam.

---

[5] Here and below we quote from Angelina's petition. The allegations of Isabella's petition are substantively the same with minor differences not relevant here.

[6] We note that Mother's counsel made no argument based on this language at the jurisdiction hearing. "Given that lay social workers are usually lumbered with the task of writing petitions, they must be given a certain amount of slack. If the parent believes that the petition does not 'adequately communicate' the department's concerns or is otherwise misleading, the onus is on the parent to challenge the petition at the pleading stage." (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1038, fn. 8.)

Code, § 6200 et seq.) defines domestic violence as "abuse perpetrated against" specified parties, including "[a] person with whom the [perpetrator] has had a child." (Fam. Code, § 6211, subd. (d).) The definition of abuse includes "[t]o place a person in reasonable apprehension of imminent serious bodily injury to that person or to another," to "harass[]," and to "disturb[] the peace of." (Fam. Code, §§ 6203, subd. (a)(3)–(4), 6320, subd. (a).) The trial court could reasonably conclude the October 2014 incident constituted domestic violence. Moreover, contrary to Parents' contention that the most recent domestic violence incident occurred during January 2014, there was evidence of subsequent incidents: in October 2014, Father reported an incident taking place while Mother and the children were living with her parents, in which Mother repeatedly hit him in front of the children, causing him to bleed.

Mother argues she was the victim of domestic violence and took steps to protect herself and the children from Father. To the contrary, there was evidence that Mother was partially responsible for the disputes. Moreover, while Mother at times took steps to protect herself and the children from Father, in the period before the supplemental petitions were filed she had allowed Father frequent contact with the children—including allowing him to live with them—despite knowing Father was only allowed Agency-supervised visitation.

Parents next challenge the allegation that they "have not to [sic] utilized substance abuse, mental health and domestic violence services." With respect to Mother, there is evidence that she initially participated in services. However, she subsequently participated inconsistently or not at all in mental health services, despite a clear need as evidenced by her March 2015 hospitalization as the result of a mental health crisis. With respect to Father, there is ample evidence that his participation in domestic violence, substance abuse, and mental health services was sporadic at best.

Finally, Parents challenge the allegation in both petitions that "the child is at substantial risk of physical harm and neglect and removal from the mother's care is the only means by which the child's safety can be ensured." Parents point to the social worker's July 2014 report that the children appeared "happy, healthy and well cared for."

9

This observation does not preclude the juvenile court from finding the children were at substantial risk. " '[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.' [Citation.] Children can be 'put in a position of physical danger from [spousal] violence' because, 'for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg . . . .' " (*In re E.B.* (2010) 184 Cal.App.4th 568, 576.) The trial court could reasonably conclude Parents' history of domestic violence placed the children at a substantial risk of physical harm.

B. *Finding That Prior Disposition Is No Longer Effective in Protecting Children*

Parents next argue the trial court failed to make the required finding that the prior disposition is no longer effective in protecting the children.

The section 387 petitions included the pre-printed form allegation that "[t]he previous disposition has not been effective in the protection or rehabilitation of the child." The juvenile court sustained the petitions "in all particulars." This order appears to supply the requisite finding.

To the extent the order was insufficient, Parents forfeited this challenge by failing to raise it below. "It is unfair to the trial court and the adverse party to give appellate consideration to an alleged procedural defect which could have been presented to, and may well have been cured by, the trial court." (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 810–811 (*Steve J.*).) In any event, substantial evidence—in particular, the ongoing domestic violence issues—supports the implied finding. (*In re Andrea G.* (1990) 221 Cal.App.3d 547, 554–555.)

III. *Disposition*

Parents argue the juvenile court failed to hold a bifurcated disposition hearing and the removal order was not supported by substantial evidence; Mother also argues there is no substantial evidence that the Agency made reasonable efforts to prevent removal. We reject these challenges.

A. *Bifurcated Hearing*

Following an evidentiary hearing, the juvenile court made jurisdictional findings and then invited argument on disposition. Parents argue the juvenile court failed to separately receive the evidence for disposition purposes or allow the parties to submit additional evidence.

Parents have forfeited this challenge by failing to raise it below. (*Steve J., supra,* 35 Cal.App.4th at pp. 810–811.) In any event, Parents have failed to demonstrate prejudice from any error. They have not identified or claimed any evidence they would have presented at an evidentiary hearing on disposition that had not already been presented at the evidentiary hearing on jurisdiction.

B. *Removal*

Parents argue no substantial evidence supports the juvenile court order removing the children from Mother's custody. We disagree.

"When a section 387 petition seeks to remove a minor from parental custody, the court applies the procedures and protections of section 361. [Citation.] Before a minor can be removed from the parent's custody, the court must find, by clear and convincing evidence, '[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody.' [Citations.] [¶] A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.)

Substantial evidence supports the juvenile court's removal order. As discussed above, there was evidence Parents were engaging in ongoing domestic violence disputes in front of the children and Mother—despite a contradictory visitation order for Father and warnings from the Agency—was allowing Father to live with them and visit them,

providing the opportunity and likelihood of further such disputes.  This evidence is sufficient to support the removal order.  (*In re E.B., supra,* 184 Cal.App.4th at p. 576.)

C.  *Reasonable Efforts to Prevent Removal*

Mother argues no substantial evidence supports the juvenile court's finding that the Agency had made reasonable efforts to prevent the need for removal.  We disagree.

"In a section 387 disposition hearing, the Agency has the burden of proof to show reasonable efforts were made to prevent or eliminate the need for removal."  (*In re Javier G.* (2006) 137 Cal.App.4th 453, 463.)  The Agency provided Mother with six months of reunification services and 26 months of family maintenance services.  These services included domestic violence services and assistance in protecting the children from exposure to Parents' domestic violence.

Mother identifies additional efforts the Agency could have made but fails to show that these would have prevented the need for the children's removal.  Mother argues the Agency failed to provide sufficient assistance in getting a restraining order.  However, Mother voluntarily allowed Father regular access to the children, including allowing him to live with them for a month in the fall of 2014.  Because there is evidence she would not have enforced a restraining order, she has not shown that this effort would have prevented the need for removal.  Mother next argues the Agency failed to visit Mother and the children monthly when she lived in Turlock.  Mother moved in late July; the social worker visited them in August and October, but was not able to successfully coordinate a visit in September because Mother did not have a phone.  Mother fails to demonstrate how a single additional visit would have prevented the need for removal.  Finally, Mother argues the Agency failed to sufficiently assist Mother after she moved to Turlock with setting up services and finding housing.  The Agency did make efforts to assist Mother with these tasks, and Mother again fails to show how any additional help would have prevented the need for removal.

IV.  *Bypass of Services for Isabella*

Parents challenge the trial court's denial of reunification services with respect to Isabella.  The trial court denied services pursuant to section 361.5, subdivision (b)(10)

12

(section 361.5(b)(10)).  We agree that section 361.5(b)(10) does not authorize the denial of services as a matter of law, and reverse.[7]

Section 361.5(b)(10) provides reunification services need not be provided if the court finds "[t]hat the court ordered *termination of reunification services* for any siblings or half siblings of the child because *the parent or guardian failed to reunify* with the sibling or half sibling *after the sibling or half sibling had been removed* from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian."  (Italics added.)

Parents argue this section does not authorize bypass of services to Isabella because the court never ordered termination of reunification services for Angelina.  Instead, following six months of reunification services, Angelina was initially reunited with Mother and family maintenance services were provided.  After she was removed on the section 387 petition the juvenile court denied additional reunification services for Angelina pursuant to section 361.5, subdivision (a), finding she was under three years of age when she was initially removed, Parents received six months of reunification services, and there was no substantial probability that she will be returned to Parents' custody.  (See § 361.5, subds. (a)(1)(B), (a)(3).)

The Agency does not contend the statutory language applies, but instead argues application of the bypass provision is consistent with the intent of the statute and it would be an absurdity to hold it does not apply here.

"In construing a statute we must ascertain the legislative intent, so as to effectuate the purpose of the law.  [Citation.]  We begin by examining the words of the statute. ' "[I]f the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of the language governs." '  [Citations.]  ' "Appellate

_____

[7] We need not and do not decide Parents' additional challenges to this order.

13

courts may not rewrite unambiguous statutes" ' or 'rewrite the clear language of [a] statute to broaden the statute's application.' [Citation.] It is only when the language supports more than one reasonable construction that we consult legislative history, the ostensible objects to be achieved, or other extrinsic aids in order to select the construction that most closely comports with the legislative intent." (*Melissa R. v. Superior Court* (2012) 207 Cal.App.4th 816, 822 [holding the plain language of section 361.5(b)(10) does not apply to sibling who had been removed pursuant to the laws of another state, and thereby had not been "removed . . . 'pursuant to Section 361' "].)

The language of section 361.5(b)(10) is very precise. It requires, for services to be denied under that subsection, a finding "[t]hat the court *ordered termination of reunification services* for any siblings . . . because the parent or guardian *failed to reunify . . . after the sibling . . . had been removed* from that parent or guardian *pursuant to Section 361 . . . .*" (Italics added.) No such order issued in this case: the only reunification services provided for Angelina were terminated when the family reunified. Although family maintenance services were terminated when the children were detained in October 2014, family maintenance services are not the same as reunification services. (Compare § 16501, subd. (g) [defining "family maintenance services"], with § 16501, subd. (h) [defining "family reunification services"].) And while the Agency notes it provided services "akin to reunification services" after Angelina was detained on the section 387 petition and Parents failed to subsequently reunify with Angelina, detention (§ 319) is not the same as "remov[al] . . . pursuant to Section 361." (§ 361.5(b)(10).)

The Agency urges us to follow *In re Gabriel K.* (2012) 203 Cal.App.4th 188, which found "[t]he intent of subdivision (b)(10) is to allow juvenile courts to deny reunification services if a parent has already failed at attempted reunification. In these circumstances, providing additional reunification services may be fruitless." (*Id.* at p. 195.) The court relied on this intent to construe section 361.5(b)(10) to apply to a subsequent petition involving the same child, explaining that "[a] statute should not be given a literal meaning if to do so would create unintended, absurd consequences. Instead, 'intent prevails over the letter of the law and the letter will be read in accordance

14

with the spirit of the enactment.' " (*Id.* at p. 196.) Two subsequent cases have disagreed with *In re Gabriel K.,* holding instead that where statutory language is plain, it cannot be ignored. (*In re B.L.* (2012) 204 Cal.App.4th 1111, 1116; *J.A. v. Superior Court* (2013) 214 Cal.App.4th 279, 284.) We agree with these cases. Where, as here, " ' "the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of the language governs." ' " (*In re B.L., supra,* 204 Cal.App.4th at p. 1116.)[8]

## DISPOSITION

The petitions are granted solely with respect to the bypass of reunification services for Isabella. In all other respects, the petitions are denied on the merits. (See Cal. Const., art. VI, § 14; *Kowis v. Howard* (1992) 3 Cal.4th 888, 894.) Let a peremptory writ of mandate issue directing the juvenile court to vacate its order bypassing reunification services with respect to Isabella and setting Isabella's case for a hearing under section 366.26. The request for a stay of the July 20, 2015 section 366.26 hearing is denied with respect to Angelina; the request is granted with respect to Isabella. The stay with respect to Isabella shall remain in effect until the remittitur issues. This decision is final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

---

[8] We express no opinion as to whether, if the juvenile court terminates Parents' parental rights over Angelina, it would then be appropriate to bypass reunification services for Isabella pursuant to section 361.5, subdivision (b)(11).

_____

SIMONS, J.

We concur.

_____

JONES, P. J.

_____

NEEDHAM, J.

(A144865)

16